UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | |
| | § | |
| MOINUDDIN MOHAMMED, | § | CRIMINAL NO. A24-CR-092-RP |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

### GOVERNMENT'S FIRST AMENDED SENTENCING MEMORANDUM[1]

The United States respectfully submits this first amended sentencing memorandum regarding the sentencing of Moinuddin Mohammed. Due to Mr. Mohammed's knowing participation in a large international conspiracy to take advantage of vulnerable, elderly individuals and deprive them of their hard-earned savings, his continued participation after being questioned by law enforcement, and his abuse of the opportunity he was given when he was granted a student visa to enter the United States, in accordance with the Plea Agreement the government recommends a sentence of 97 months, the low end of the Sentencing Guideline Range.

**RELEVANT FACTS**

Defendant served as a courier in an international conspiracy to defraud persons, often vulnerable and elderly, in the United States and launder the proceeds of that conspiracy. The fraud scheme would identify vulnerable individuals through various online phishing methods, for example falsely notifying the target victim of a possible fraudulent charge on a credit card or other type of account. A member of the fraud conspiracy would then contact the target victim by phone

---

[1] The sentencing memorandum has been amended to reflect that it is being filed pursuant to the authority of Acting United States Attorney Margaret F. Leachman. No other changes have been made to this sentencing memorandum.

and falsely claim to be a real government official. In this case, two of the victims were contacted by a person claiming to be Alamdar Hamdani, the United States Attorney for the Southern District of Texas at the time of the offense. The fake government official would then claim the target victim was under investigation or at risk of some financial loss and, in order to resolve the investigation or prevent the loss, the target victim was told they would need to deposit cash, gold, or some other item of financial value with the fake government official for safekeeping while the issue was resolved. The victim would be given specific instructions for obtaining the cash, gold, or other item of financial value and further instructed how to package the valuable item for delivery to the fake government official. Victims were often instructed to purchase gold or other valuable items from the internet or instructed to make cash withdrawals from their bank accounts.

Once the victim had obtained the valuable item or cash, the fake government official would then inform the victim that the package containing the valuable item or cash would be received by another member of the conspiracy, often referred to as a courier. Sometimes the courier would travel to the victim's home to pick up the package and sometimes they would meet in the parking lot of a local business like a Target or Walmart. The couriers are essential to the scheme. They would coordinate with other members of the conspiracy by phone or the internet and would be given instructions about the pickup. Once the pickup had occurred, the courier would communicate receipt of the package and its contents to other members of the conspiracy by phone and the internet and then deliver the same to other members of the conspiracy by various means. Depending on the type of valuable property obtained, the courier may be paid by a member of the conspiracy via an online payment system like Zelle, Venmo, or PayPal or they may simply keep a certain percentage of the valuable property or cash.

Defendant, who is a citizen of India and was in this country pursuant to a student visa, served as a courier for this conspiracy. While living in San Marcos, Texas, Defendant traveled to distant parts of Texas to pick up proceeds of the fraud. He traveled to Georgetown, Texas; Pharr, Texas; and College Station, Texas to pick up gold and cash for the conspiracy, often making multiple pickups from the same victim. Defendant was given specific instructions from other conspirators regarding the pickups. After making the pickups, Defendant documented his unboxing of the proceeds and transferred the fraud funds to other members of the conspiracy. When encountered by the Williamson County Sheriff's department during a pickup from a victim, Defendant lied to law enforcement and then, days later, went back to his courier activities, this time targeting a victim in College Station. Defendant again lied to law enforcement when he was arrested by the FBI. However, in a later interview, the government does believe that Defendant was honest and he accepted responsibility for his actions.

Defendant's activities are part of an international conspiracy that has been traced back to call centers in India. Following the evidence initially obtained in the investigation of Defendant, the FBI has identified at least 21 victims in different parts of the United States and approximately $5.8 million in intended loss connected to the conspiracy. The FBI's actions disrupted ongoing victimization, stopping some further loss to the victims.

## ARGUMENT AND AUTHORITIES

### I. Mohammed was involved with more than three victims.

In his sentencing memorandum, Mr. Mohammed falsely claims that he "was directly and indirectly involved with *at most* three victims." Def.'s Sent. Mem. at 2 (emphasis in original). That claim is false. In addition to the three victims highlighted in the Indictment and PSR, Mr.

Mohammed also admitted in an interview with the government to having personally conducted several other pickups from other victims. Those victims just have not been identified.

Mr. Mohammed admitted that his first pickup was from an unknown victim in Houston, Texas in late December 2023. Mr. Mohammed picked up cash from that victim, made an unboxing video, removed $1,000 from the box to keep as his fee, and then passed the remainder to another unknown member of the conspiracy in a shopping complex parking lot.

Mr. Mohammed's second pickup was from an unknown victim in Austin in mid-January 2024. Mr. Mohammed traveled to the victim's residence, received a box with $25,000 cash of which he stated he kept $500, and then delivered the box to an unknown person at a gas station near the Austin airport.

Mr. Mohammed admitted making another pickup and delivering the box to an unknown person in Houston. He was asked to take the box to Louisiana, but said he would only travel as far as Houston. Mr. Mohammed could not recall where this pickup was made, but denied that it was from the Pharr, Texas victim. Mr. Mohammed kept $3,000-$4,000 in cash from this pickup.

Mr. Mohammed also admitted making multiple other pickups of gold and cash. He did not know exactly how many pickups he had made. He recalled dropping most of the boxes off in Houston, but also recalled making a drop off in Dallas.

Mr. Mohammed also admitted flying to Tulsa, Oklahoma to make a pickup on behalf of the conspiracy. He was instructed to fly to Tulsa, rent a car, pick up a package, and drive it to Dallas. However, when he arrived in Tulsa he was told that the pickup was cancelled, so he flew back to Austin without making a pickup.

In addition to his admissions of multiple victim pickups in addition to the three victims identified in the Indictment, additional evidence of Mr. Mohammed's involvement in the

conspiracy included electronic funds transfers (both sending and receiving) to other known or suspected couriers in other states and communications between the coordinators who directed Mr. Mohammed and the other known or suspected couriers with whom Mr. Mohammed exchanged electronic funds transfers.

U.S.S.G. § 1B1.3(a)(1)(B) covers relevant conduct "in the case of a jointly undertaken criminal activity," which would include a conspiracy. Relevant conduct in a conspiracy includes acts and omissions of others that were 1) "within the scope of the jointly undertaken criminal activity," 2) "in furtherance of that criminal activity," and 3) "reasonably foreseeable in connection with that criminal activity." *Id*. Mr. Mohammed's actions were not limited to "at most" pickups from three victims. He was involved in multiple pickups from multiple different victims. He delivered the packages to different individuals in Austin, Dallas, and Houston. He knew the conspiracy operated beyond Texas because the persons he communicated with were not in Texas, they asked him to deliver a pickup to Louisiana, and he actually travelled to Oklahoma to perform a pickup that was cancelled. The fact that the conspiracy involved multiple victims, in multiple states, and more fraudulently obtained property than what he personally picked up was more than reasonably foreseeable and Mr. Mohammed should be held responsible for the full extent of the intended losses revealed by the government's investigation.

## II.  Significant loss and harm to the victims.

The conspiracy that Mr. Mohammed knowingly participated in has caused significant loss to the victims involved. So far, the intended loss of the identified victims tied to Mr. Mohammed is over $5.8 million. Most, if not all, of the victims were elderly individuals who cannot afford such losses in the later stages of their lives. These funds often come from retirement and savings accounts for individuals who are past the working part of their lives and who cannot easily cover

the loss. One victim, who reported withdrawing almost $445,000 from her retirement account, then had to take out a home equity loan to pay back some of the withdrawal in order to avoid paying taxes on it. That same victim reports being advised to sell the home she built 27 years ago in order to secure her financial position.

Another victim wrote:

> It was such a traumatic and devastating financial loss i/a/o of $226,779 causing me a lot of stress financially, emotionally and physically to this day. I have to admit there have been sleepless nights. I am 73 years old, single and retired. I scrimped and saved when I was working. Now I have nothing. My retirement money dates back to 2011 at Wells Fargo where I had invested in stocks and annuities and my savings. Now [it] is all gone. I don't have any money for emergencies, my beneficiaries, home improvements and/or travel.
>
> Now I have to budget my money carefully and wisely to just pay for the bare necessities and essentials of everyday living.

This conspiracy was different than most other fraud conspiracies in that it preyed on people's fear. Romance fraud schemes prey on people's loneliness. Pig butchering schemes appeal to people's greed. Business Email Compromise (BEC) schemes rely on people's less than perfect attention to detail. But this scheme, the government imposter scheme, depends on and succeeds by creating fear. Fear that a person will lose their hard-earned savings, fear that the government will wrongfully prosecute an innocent person for imaginary crimes. It used that fear to convince people to lie to their banks and financial advisors regarding the reasons for their withdrawals. One of the victims in the Indictment, Victim 3, was still being victimized when he was first contacted by the FBI. The government impersonator was able to convince Victim 3 to lie to the FBI and deny that he was being victimized.

The victims of this conspiracy will have to deal with the financial and psychological harm done to them for the rest of their lives. That harm requires a significant sentence.

**III.    Mr. Mohammed continued his participation in the conspiracy after being questioned by law enforcement.**

Mr. Mohammed was stopped by Williamson County Sheriff's deputies after arriving at Victim 1's residence in Georgetown, Texas for his third pick up from that victim. Plea Agreement at 6. Mr. Mohammed lied to the deputies who questioned him, falsely claiming that he had never been to that house before, that he was there to pick up a Lyft passenger, and that he only picked up people, not packages. *Id*.

Despite this encounter with law enforcement, Mr. Mohammed continued to participate in the conspiracy. The evidence obtained from his phone shows that he was instructed to travel to College Station to pick up a package from Victim 3 and he did in fact travel to College Station to make the pickup. The delivery did not occur when Mr. Mohammed made the trip (for reasons not known to the government), but Victim 3 was ultimately defrauded out of approximately $470,000. PSR ¶¶ 22-23.

Later, when Mr. Mohammed was arrested on the federal indictment, he again lied to law enforcement regarding his participation in the scheme.

**IV.    Mr. Mohammed was a guest in the United States.**

Mr. Mohammed is a citizen of India. At the time of the offense, he was a guest in this country as a fortunate recipient of a student visa. Mr. Mohammed abused that trust by knowingly participating in a scheme to defraud citizens of this country out of millions of dollars.

**V.    A significant sentence is necessary to deter others and send a message.**

Unfortunately, Mr. Mohammed is the tip of the iceberg. Couriers across the United States continue to victimize vulnerable and elderly persons using the same scheme used by Mr. Mohammed's conspiracy. A strong sentence for Mr. Mohammed will send the message to others

engaged in or considering engaging in the same type of activity that such behavior will not be tolerated and will be severely punished.

A 97 month sentence will send that message. That sentence takes into account the seriousness of Mr. Mohammed's offense, the harm he caused to his victims, and his continued criminal actions following his first encounter with law enforcement, while acknowledging his acceptance of responsibility and eventual truthful interview with the government.

## VI. CONCLUSION

For the foregoing reasons, the United States recommends a sentence of 97 months imprisonment, which is the low end of the Sentencing Guideline Range.

Respectfully submitted,

MARGARET F. LEACHMAN
Acting United States Attorney


By:  /s/ Keith M. Henneke
KEITH M. HENNEKE
Assistant United States Attorneys

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Government's Sentencing Memorandum has been delivered via the CM/ECF system on this the 14th day of February 2025 to defense counsel.

*/s/ Keith M. Henneke*
KEITH M. HENNEKE
Assistant United States Attorney